UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21206-CIV-HIGHSMITH

GREAT LAKES REINSURANCE (UK)
PLC,

    Plaintiff,
v.

CLARA VASQUEZ,

    Defendant.
_____/

## ORDER

THIS CAUSE is before the Court on the parties' cross-motions for summary judgment. This Court has reviewed Defendant's Motion for Summary Judgment and Memorandum of Law, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, and Plaintiff's Cross-Motion for Summary Judgment, and Defendant's Response to Plaintiff's Cross-Motion for Summary Judgment and Memorandum. This Court has also reviewed the record and relevant case law. For the following reasons, it is hereby ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.

## I. BACKGROUND

The instant matter stems from an insurance policy issued by Plaintiff, Great Lakes Reinsurance (UK) PLC ("Great Lakes") to Defendant Clara Vasquez ("Vasquez") for coverage of her 2005 forty-foot motor vessel, "Tropic Delight." On or about March 1, 2006, Vasquez submitted an application for marine insurance through Blue Water Marine Insurance Company for the subject vessel. Pursuant to the application, on or about March 27, 2006, Great Lakes issued

Marine Insurance Policy No. 200/658/73588, affording full coverage for the subject vessel. This policy afforded Hull and Machinery coverage in the amount of $290,000.00 for the solid triple performance boat. The total premium paid amounted to $8505.00 with $425.25 in additional tax and a $21.26 service fee.

On or about April 12, 2006, Vasquez's son (who was listed in the insurance application as an additional operator of the boat) decided to take out the Tropic Delight, and the trip from the boat's secure yard in Miami to Key Biscayne for launching covered approximately twenty miles. Vasquez's son hitched the boat to his truck and, as part of his usual launching regimen, he stopped at a shopping center and entered a Publix grocery store on his way to Key Biscayne. While he was in the store, his truck and the Tropic Delight, which was hitched to his truck, were forcibly stolen from Publix's parking lot. Vasquez's son promptly reported the theft to the police. Vasquez made a timely claim under her insurance policy, gave a statement of proof of loss, and complied with all other requirements by her insurance carrier. The truck that had been towing the boat was later recovered and visible signs of forced entry were apparent. The Tropic Delight itself, however, was never found.

The insurance agreement between Plaintiff and Defendant provides definitions to the key terms of the agreement, the insuring agreement itself, terms of coverage and exclusions to these terms of coverage, as well as general conditions and warranties, duties, a service of suit clause as well as one regarding a choice of law (the policy states that New York law shall apply to the interpretation of this contract; see page 13 of the insurance contract). The exclusions at issue in this case pertaining to the terms and coverage with regard to theft of a boat are found in the insurance policy at "3. Coverage A, Hill, Machinery, Equipment and Dinghy." (See page 2 of the

insurance contract).  The Exclusions to the Coverage A section of the agreement state: "Unless specifically agreed by us in writing and additional premium charged the following losses and or damages (whether incurred directly or indirectly) are not covered by the insuring agreement."  Of the exclusions listed in this section exclusions a) and k) seem most applicable to this case. Exclusion a) states: "Damage sustained by scheduled vessel whilst being transported over land (whether by trailer or other method of conveyance approved by us in writing), more than 100 miles from the normal place of storage, as disclosed within your application form.  Exclusion k) states: "Theft of the scheduled vessel and or its equipment whilst on a trailer/boatlift/hoist/dry storage rack unless the scheduled vessel is situated in a locked and fenced enclosure or marina and there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals."

## II. LEGAL STANDARD

Summary Judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party must demonstrate the absence of any genuine factual dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, (1986). The party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts. [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348 (1986).  The non-moving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary

judgment," however, he may not merely rest on his pleadings. *Celotex Corp. V. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, (1986).

This court construes all "evidence in the light most favorable to the non-moving party." *Giordano v. City of N.Y.*, 274 F.3d 740, 746 (2d Cir. 2001). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986). But, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. *See Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Vasquez's Motion for Summary Judgment contends that summary judgment is appropriate in her favor because there are two ambiguities presented in the insurance contract: (1) the specific wording of Paragraph k) can be read in several different ways; (2) the entire provision can be read as a solitary paragraph or in connection with paragraphs a), i) and k) as separate exclusions relating to transport, use on the water and storage, respectively. Plaintiff's Cross-Motion for Summary Judgment contends that the insurance policy unambiguously excludes coverage for the theft of Vasquez's vessel. Plaintiff contends that because the vessel had been placed on its trailer, according to exclusion k) of the insurance policy, it was only afforded coverage for theft when it was located inside of a locked, fenced enclosure. Plaintiff contends that once the vessel left its secure location there could be no coverage until and unless the vessel was once again "situated in a locked and fenced enclosure or marina." Great Lakes maintains that the contract interpretation

argued by Vasquez would clearly strain the language of the Plaintiff's insurance contract beyond its reasonable and ordinary meaning.

According to New York law, "the determination of whether an insurance policy is ambiguous is a matter of law for the court to decide." *See Commercial Union Ins. Co. v. Flagship Marine Services, Inc.*, 190 F.3d 28 C.A.2 (N.Y.), 1999, (citing *In re Prudential Lines, Inc.*, 158 F.3d 65, 77 (2nd Cir. 1998). "As a general rule, plain or unambiguous language will be given its ordinary meaning and effect, and the need to resort to rules of construction arises only when an ambiguity exists." *See Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 306 (2nd Cir. 1987). "Where the policy is ambiguous, the policy must be narrowly interpreted in favor of the insured." *MDW v. CNA Insurance*, 772 N.Y.S.D.2d 79, 82 (NY 2nd Dept. 2004).

"Ambiguity exists where the term of a contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *See Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998). The court reads the provisions of the insurance agreement in question dealing with Exclusions to Coverage A as separate instances of exclusions, each independent from one another. In this case, if exclusion k) is read to relate to storage, as Vasquez suggests it may be, it seems clear and unambiguous that Vasquez cannot recover based on the issue of storage under exclusion k) which states: "Theft of the scheduled vessel and or its equipment whilst on a trailer/boatlift/hoist/dry storage rack unless the scheduled vessel is situated in a locked and fenced enclosure or marina and there is visible evidence of forcible entry and or removal made by tools,

explosives, electricity or chemicals."  However, if exclusion a) is read to relate to transport and both parties agree (as they have) that no material facts remain in dispute between them regarding Defendant's transport of the vessel, then Vasquez has a claim to recovery under exclusion a) of the contract.  Exclusion a) states: "Damage sustained by scheduled vessel **whilst being transported over land** (whether by trailer or other method of conveyance approved by us in writing), more than 100 miles from the normal place of storage, as disclosed within your application form."  (Emphasis added)  However, in order for this Court to determine whether exclusion a) applies, it must examine the meaning of the phrase "whilst being transported" as found within the insurance agreement.

While the insurance agreement sets forth in its very first section twenty definitions (labeled a through t) including those of "you and your" and "we, us and our," nowhere in this set of definitions does it define the phrase "whilst being transported over land" or even the term "transport" for the purposes of either insuring or excluding from insurance any damage or loss sustained therein.  "The insurer cannot, by failing to define the terms... or to include any additional qualifying or exclusionary language, insist upon a narrow, restrictive interpretation of the coverage provided." *See National Merchandise Co. v. United States Auto. Assoc.*, 400 So.2d 526, 530 (Fla. 1st DCA 1981).  "As a general rule, plain or unambiguous language will be given its ordinary meaning and effect..." *See Cunningham v. Insurance Co. of North America*, 521 F.Supp.2d 166 (E.D.N.Y. 2007).  The term "transport" is typically defined as "to carry, move, or convey from one place to another." *The Random House College Dictionary*, p. 1397

This Court finds that, in this insurance contract, there is ambiguity in the phrase "whilst being transported over land." It can certainly be argued that this phrase includes (as in the present

case) a temporary stop for provisioning between the vessel's departure from its place of storage and its ultimate intended destination. The distinguishing of exclusion k) from exclusion a) in the contract suggests that provisions governing transport and storage are distinct from one another, for the purposes not only of exclusion from coverage, but for coverage of the insured vessel itself. Without clear and unambiguous language in the policy as to when the insured vessel is considered to be in transport over land within 100 miles from its normal place of storage and therefore covered by this insurance policy and when the insured vessel is considered merely to be stored on a trailer, this Court finds that a reasonable person could ascribe more than one meaning to the phrase "whilst in transport"--one that would provide for coverage and one that would not.

In this case the Plaintiff insurer, as draftsman of the form policy, had the ability to address this ambiguity while drafting the contract and did not do so. This ambiguity provides Vasquez with two possible interpretations of coverage pertaining to her particular situation. In New York, when an exclusionary clause is found by a court to be ambiguous, any ambiguity must be resolved in favor of the insured and summary judgment should be granted on behalf of the insured. *See McCormick & Company, Inc. v. Empire Insurance Group* (2nd Cir. 1989). Because this Court finds that the clause at issue in this case is ambiguous, it must also grant summary judgment in favor of the insured, Ms. Vasquez.

## IV. CONCLUSION

For the reasons stated in this Order it is hereby ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED. This Court HOLDS that Ms. Vasquez is entitled to coverage for the loss of her boat under the subject insurance policy. This case is CLOSED.

DONE AND ORDERED in Chambers, at Miami, Miami-Dade County, Florida, this 27th day of June, 2008.

_____
SHELBY HIGHSMITH
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record